UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CORE-MARK MIDCONTINENT, INC.,

    Plaintiff,

-against-

TRI-STATE CANDY WHOLESALE, INC.
and KIRTIKUMAR S. VED a/k/a VED
KIRTIKUMAR a/k/a KIRTI VED a/k/a
KIRDI KUMAR,

    Defendants.

**COMPLAINT**

Civ. Action No.: 1:14-CV-3694

---

Plaintiff CORE-MARK MIDCONTINENT, INC., by and through its attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, as and for its Complaint against Defendants TRI-STATE CANDY WHOLESALE, INC. and KIRTIKUMAR S. VED a/k/a VED KIRTIKUMAR a/k/a KIRTI VED a/k/a KIRDI KUMAR alleges as follows:

## JURISDICTION & VENUE

1. Jurisdiction of this Court is proper pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship of the parties and because the amount in controversy exceeds seventy five thousand and 00/100 ($75,000.00) Dollars.

2. Venue is proper in this District pursuant to 28 U.S.C. §1391 since the subject contract between the parties was performed and breached by Defendants in this District.

## PARTIES

3. Plaintiff Core-Mark Midcontinent, Inc. ("Core-Mark") is a foreign business corporation organized and existing under the laws of the State of Arkansas, with a place of business at 100 West End Road, Wilkes-Barre, Pennsylvania 18703.

4. At all times relevant, Core-Mark was an authorized dealer and wholesaler of tobacco products and candy, confections, snacks, toiletries, and other "convenience-store" type products (hereinafter collectively referred to as the "Products") and regularly engaged in the sale and distribution of such Products.

5. Upon information and belief, Defendant Tri-State Candy Wholesale, Inc. ("Tri-State") is a business corporation organized and existing under the laws of the State of New York with offices and a place of business at 54-36 48th Street, Maspeth, New York 11378.

6. Upon information and belief, Tri-State is known in the Grocery product distribution industry as a "distributor" or a "sub-jobber". Tri-State essentially acts as a "middleman" between a grocery wholesaler like Core-Mark, and the retailers, like grocery stores, "convenience" stores and gas stations.

7. Upon information and belief, Defendant Kirtikumar S. Ved a/k/a Ved Kirtikumar a/k/a Kirdi Ved a/k/a Kurdi Ved a/k/a Kirdi Kumar ("Ved") is a resident of the State of New York, and resides at 28 Center Drive, Roslyn, New York 11576.

8. Upon information and belief, Ved is the Chief Executive Officer and/or owner of Tri-State.

9. Upon information and belief, at all times relevant, Tri-State regularly engaged in the purchase, sale and distribution of the Products.

## FACTUAL BACKGROUND

10. On February 6, 2009, Ved, on behalf of Tri-State, executed a Credit Application (the "Agreement")(a copy of which is attached hereto and incorporated herein as Exhibit "A").

2

11. The Agreement, together with the invoices, account statements and routing guides sent to Tri-State by Core-Mark, set forth the terms of the business relationship between Core-Mark and Tri-State.

12. Under the terms of the Agreement, Tri-State could purchase Products from Core-Mark on credit.

13. Initially, Core-Mark and Tri-State agreed that agreed that Tri-State could purchase Products on fourteen (14) days credit, meaning all products ordered by Tri-State from Core-Mark had to be paid for within 14 days of the date of the Order.

14. Later, Core-Mark and Tri-State agreed that Tri-State could purchase Products on twenty-one (21) days credit (a copy of Tri-State's account statement reflecting such terms is attached hereto and incorporated herein as Exhibit "B"), meaning all products ordered by Tri-State from Core-Mark had to be paid for within 21 days of the date of the Order.

15. All unpaid debt, beyond the agreed to terms, is subject to service and interest charges at a rate of 1.5% per month for the unpaid sums (see Exhibit "A").

16. Additionally, pursuant to the terms of the Agreement, Tri-State also agreed under to "pay all Court costs and attorney fees" incurred by Core-Mark should collection on any unpaid balance be necessary (see Exhibit "A").

17. In conjunction with the Agreement, Ved signed a "Guarantee of Payment," (the "Guarantee") in which Ved agreed to be individually responsible for the outstanding debt of Tri-State (see Exhibit "A").

## AS AND FOR A FIRST CLAIM AGAINST TRI-STATE

18. Core-Mark repeats and realleges each and every allegation in paragraphs "1" through "17" of the Complaint as if fully set forth herein.

3

1057061v.3

19. The Agreement is a valid, binding and enforceable contract between Core-Mark and Tri-State.

20. The terms of the Agreement were mutually agreed to by the parties, and are supported by good and valuable consideration.

21. Following the execution of the Agreement on February 6, 2009, Tri-State ordered Products from Core-Mark, and Core-Mark delivered those products, until on or about May 12, 2014.

22. At the time of delivery of Tri-State's orders for the Products, Core-Mark delivered to Tri-State an invoice describing the Products delivered, and the agreed upon price for each Product.

23. Although Tri-State made certain payments to Core-Mark to pay the invoices it owed, Tri-State failed to make all the payments due and owing.

24. In fact, many checks Tri-State tendered to Core-Mark were returned because Tri-State's bank account did not have sufficient funds in it.

25. Pursuant to Core-Mark's procedures, as well as commonly-accepted practice, Core-Mark applied any payments made by Tri-State to Tri-State's oldest outstanding invoices owed to Core-Mark.

26. Core-Mark invoiced and delivered all of the Products requested.

27. Core-Mark performed its obligations under the Agreement.

28. However, despite Core-Mark's fulfillment of its obligations under the Agreement, Tri-State has failed to remit payment as required for the Products ordered and received from Core-Mark.

1057061v.3

29. Accordingly, Tri-State is indebted to Core-Mark from Products ordered and received from on or about January 6, 2014 through May 12, 2014 for the sum of Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars (hereinafter the "Debt") (see Exhibit "B").

30. The Debt takes into account certain credits issued to Tri-State Core-Mark for payments made and goods returned (see Exhibit "B").

31. Despite repeated demand from Core-Mark, Tri-State has failed to make timely payments for goods delivered and invoiced to it.

32. Tri-State's failure to make payment for the Products constitutes a breach under the Agreement, for which Core-Mark is entitled to damages, in the total amount of Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars.

33. In addition to compensatory damages for the prices of the delivered goods, pursuant to the express terms of the Agreement, Core-Mark is entitled to service and interest charges at a rate of 1.5% per month for the unpaid sums, plus "collection costs and attorney's fees," and Core-Mark respectfully requests judgment for this sum in an amount to be determined at trial (see Exhibit "A").

## AS AND FOR A SECOND CLAIM AGAINST TRI-STATE

34. Core-Mark repeats, realleges and incorporates by reference each and every allegation set forth in paragraphs "1" through "34" as if fully set forth herein.

35. Tri-State is indebted to Core-Mark for the unpaid balance of the debt for the Products delivered to it. The total unpaid balance due and owing to Core-Mark is Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars.

36. Core-Mark provided invoices and statements to Tri-State evidencing the Debt.

1057061v.3

37. Tri-State has not disputed said statements of accounts.

38. To date, Tri-State has failed to pay the amounts due, as stated in said accounts (see Exhibit "B").

39. Accordingly, an account has been stated between Core-Mark and Tri-State for the amount of Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars.

40. In addition, Core-Mark is Core-Mark is entitled to service and interest charges at a rate of 1.5% per month for the unpaid sums, plus "collection costs and attorney's fees," and Core-Mark respectfully requests judgment for this sum in an amount to be determined at trial (see Exhibit "A").

## AS AND FOR A THIRD CLAIM AGAINST TRI-STATE

41. Core-Mark repeats, re-alleges and incorporates by reference each and every allegation set forth in paragraphs "1" through "40" as if fully set forth herein.

42. In the event that it is judicially determined that no contractual relationship exists between the parties, the truth of which is denied, then Tri-State has been unjustly enriched by the receipt and use of the Products, to the detriment of Core-Mark, to which no corresponding benefit was given for its sale and supply of the Products to Tri-State.

43. Under the circumstances, it would be unjust and inequitable to allow Tri-State to retain said benefits without making fair and reasonable restitution to Core-Mark.

44. Accordingly, Core-Mark demands quantum meruit and restitution from Tri-State in the amount of Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars, plus interest.

## AS AND FOR A FOURTH CLAIM AGAINST DEFENDANT VED

6

1057061v.3

45. Core-Mark repeats and realleges each and every allegation set forth in paragraphs "1" through "44" as if fully set forth herein.

46. In conjunction with the Agreement, Ved signed a "Guarantee of Payment," (the "Guarantee") in which he agreed to be individually responsible for the outstanding debt of Tri-State (see Exhibit "A").

47. By signing the Guarantee, Ved agreed to personally guarantee and answer for the debts of Tri-State owed to Core-Mark. Additionally, Tri-State agreed under the Guarantee to "pay all Court costs and attorney fees" incurred by Core-Mark (see Exhibit "A").

48. Core-Mark has demanded that Ved pay the debts Tri-State owes to Core-Mark.

49. Ved has refused to pay the debts Tri-State owes to Core-Mark.

50. Ved has breached the Guarantee.

51. Therefore, judgment should be entered against him, holding him personally, jointly and severally liable to Core-Mark for all sums owed by Tri-State pursuant to the Agreement, in the amount of Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars, plus interest, attorney's fees and collection costs.

## AS AND FOR A FIFTH CLAIM AGAINST DEFENDANTS TRI-STATE AND VED

52. Core-Mark repeats and realleges each and every allegation set forth in paragraphs "1" through "51" as if fully set forth herein.

53. Tri-State tendered certain checks for Core-Mark to be cashed on specified dates in the future and applied to the Debt.

54. On May 14, 2014, Core-Mark attempted to cash the first of the Tri-State checks. This check was promptly returned for insufficient funds.

1057061v.3

55. Shortly thereafter, on May 16, 2014, Core-Mark attempted to deposit the second of Tri-State's checks.

56. This second check was returned as a result of Tri-State's direction to its bank to stop payment.

57. From May 14, 2014 through the present, a total of twelve (12) checks have been stopped payment on by the Defendants (the "Bounced Checks").

58. Despite numerous demands to Tri-State and Ved to make good on the Bounced Checks, Defendants have failed to do so.

59. The total amount due and owing on the Bounced Checks is Six Hundred Nine Thousand Sixty Nine and 02/100 ($609,069.02) Dollars.

60. Core-Mark has fully discharged its contractual obligations to Tri-State.

61. As a result thereof, Tri-State is indebted to Core-Mark at a minimum of Six Hundred Nine Thousand Sixty Nine and 02/100 ($609,069.02) Dollars, plus interest.

62. Ved personally guaranteed the debts of Tri-State and therefore is liable for the amounts owed on the Bounced Checks.

63. Ved is also liable for the amounts owed on the Bounced Checks pursuant to the provisions of New York UCC §3-403.

64. Defendant Tri-State has submitted additional checks to Core-Mark above and beyond the returned and stopped payment checks that are likely to be returned by the financial institution for not having sufficient funds or once again having stopped payment on. Defendants should likewise be held responsible for those future checks which are returned for insufficient funds or stopped payment on.

1057061v.3

65. Accordingly, a judgment should be rendered against Defendants Tri-State and Ved in the amount of to be determined at trial, with said amount being no less than Six Hundred Nine Thousand Sixty Nine and 02/100 ($609,069.02) Dollars, plus returned check fees, interest, collection costs and attorneys' fees.

## AS AND FOR A SIXTH CLAIM AGAINST DEFENDANT TRI-STATE

66. Core-Mark repeats and realleges each and every allegation set forth in paragraphs "1" through "65" as if fully set forth herein.

67. Pursuant to a separate security agreement (the "Security Agreement") was executed in conjunction with the Agreement, Tri-State granted to Core-Mark a continuing security interest in all of Tri-State's assets, cash, property, equipment, merchandise, Products and goods in order to further secure Tri-State's payment obligations (a copy of the Security Agreement is attached hereto and incorporated herein as Exhibit "C").

68. On February 13, 2011, Core-Mark filed a UCC-1 Financing Statement perfecting its security interest in Tri-State's assets (a copy of which is attached hereto and incorporated herein as Exhibit "D").

69. Above and beyond the security agreement and UCC, Core-Mark has a common law security interest in the Products it delivered to Tri-State, until the Products are paid for.

70. Tri-State's account with Core-Mark has become past due in the amount of Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars, plus interest.

71. Despite numerous demands by Core-Mark, Tri-State has failed to pay the balance it owes.

72. Tri-State's failure to pay the Debt owed violates Core-Mark's security interest.

73. Accordingly, pursuant to Article 71 of the New York Civil Practice Law and Rules, as well as the Federal Rules of Civil Procedure, Core-Mark should be granted a seizure/replevin order allowing Core-Mark to seize the products and goods it has a security interest in and/or a permanent injunction preventing Tri-State from transferring its assets, Products and goods to another person and/or entity.

74. Core-Mark has no adequate remedy at law.

75. Core-Mark has not previously applied for such relief.

**WHEREFORE**, Plaintiff Core-Mark demands judgment as follows:

a) On the first claim against Tri-State, in an amount to be determined at trial, with said amount being no less than Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars, plus interest of 18% per annum, attorneys' fees and collections costs under the Agreement;

b) On the second claim against Tri-State, in an amount to be determined at trial, with said amount being no less than Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars, plus interest of 18% per annum, and attorneys' fees and collections costs under the Agreement;

c) On the third claim against Tri-State, in an amount to be determined at trial, with said amount being no less than Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars, plus interest;

d) On the fourth claim against Ved, in an amount to be determined at trial, with said amount being no less than Two Million Six Hundred Eighty Three Thousand Two Hundred Four and 52/100 ($2,683,204.52) Dollars, plus interest of 18% per annum, attorneys' fees and collections costs under the Agreement;

e) On the fifth claim against Defendants, in an amount to be determined at trial, with said amount being no less Six Hundred Nine Thousand Sixty Nine and 02/100 ($609,069.02) Dollars, plus attorneys' fees and interest;

f) On the sixth claim against Tri-State, Core-Mark demands a seizure order and/or a permanent injunction to enforce its security interest;

g) For Core-Mark's attorneys' fees should fees not be awarded under the Agreement;

1057061v.3

h) For the costs and disbursements of this action; and

i) For such other and further relief as this Court deems just and proper.

Dated: June 11, 2014
Albany, New York

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: *s/Peter Lauricella*
Peter A. Lauricella, Esq. (PL 2192)
*Attorneys for Plaintiff Core-Mark Midcontinent, Inc.*
677 Broadway – 9th Floor
Albany, New York 12207
Telephone: (518) 449-8893
Our File No.: 08821.00115
peter.lauricella@wilsonelser.com