UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CORE-MARK MIDCONTINENT, INC.,

                Plaintiff,　　　　　　　　Docket No.
　　　　　　　　　　　　　　　　　　　Civ. Action No.: 1:14-CV-3694
    -against-
　　　　　　　　　　　　　　　　　　　Hon. Sterling Johnson, Jr.
TRI-STATE CANDY WHOLESALE, INC.
 and KIRTIKUMAR S. VED a/k/a VED
KIRTIKUMAR a/k/a KIRTI VED a/k/a
KIRDI KUMAR,

                Defendants.
_____

# REPLY MEMORANDUM OF LAW

### IN FURTHER SUPPORT OF PLAINTIFF CORE-MARK MIDCONTINENT INC.'s MOTION FOR SUMMARY JUDGMENT

                                    WILSON, ELSER, MOSKOWITZ, EDELMAN &
                                    DICKER, LLP
                                    18 Corporate Woods Boulevard
                                    Albany, New York 12211
                                     (518) 449-8893

                                    *Attorneys for Plaintiff Core-Mark*
                                    *Midcontinent, Inc.*

**OF COUNSEL:**  Peter A. Lauricella
                        Christopher Priore

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

REPLY ARGUMENT .............................................................................................................. 2

DEFENDANTS' ONLY "DEFENSE" TO SUMMARY JUDGMENT IS AN
AFFIRMATIVE DEFENSE THAT WAS NEVER PLED AND THEREFORE HAS
BEEN WAIVED, BUT EVEN IF CONSIDERED, DEFENDANTS' ALLEGATION
THAT CORE-MARK VIOLATED NEW YORK TAX LAW §484 IS MERITLESS
SINCE IT DOES NOT APPLY TO CORE-MARK AND WOULD NOT BAR
RECOVERY IN ANY EVENT. ................................................................................................ 2

    A.       The Only "Defense" Raised by Defendants In Opposition To Core-
Mark's Motion is an Unpled Affirmative Defense, and
Accordingly, Was Waived. ........................................................................ 2

    B.       Even If Defendants Didn't Waive This Defense, Defendants' Self-
Serving Testimony Regarding Alleged "Rebates" Is Insufficient to
Defeat Summary Judgment. ...................................................................... 4

    C.       Core-Mark Is An "Agent" Within The Meaning of New York Tax
Law § 470 (12) and Therefore Cannot Violate § 484(a)(2). ...................... 5

    D.       Tri-State Provides No Evidence That Core-Mark Sold or Offered
to Sell Cigarettes in Violation of New York Tax Law § 484 (a)(1)
Which is an Essential Element of Their Defense. ..................................... 7

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Am. Fed Group, Ltd. v. Rothenberg,
 136 F.3d 897 (2d Cir. 1998) ............................................................................................. 3

Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,
 402 U.S. 313 (1971) ......................................................................................................... 3

Blue Star Meat Corp. v. Gourmet Box, Inc.,
 19 Misc.3d 137(A) (1st Dep. 2008) ................................................................................. 4

Celotex Corp. v. Catrett,
 477 U.S. 317, 323-325 (1986) ......................................................................................... 5

Charter Oak Fire Ins. Co. v. Tri-County Fire & Safety Equipment Co.,
 636 F. Supp. 2d 193 (E.D.N.Y 2009) .............................................................................. 5

City of New York v. Golden Feather Smoke Shop, Inc.,
 2009 U.S. Distr. LEXIS 76306 (E.D.N.Y. 2009) ............................................................ 7

Jetro Enters v. Taxation Dept.,
 194 A.D. 2d 1970 (App. Div. 1993) ........................................................................... 8, 10

Johnson v. Kaufman Co.,
 2017 WL 978099 (N.D. Tex. 2017) ................................................................................. 5

Rovtar v. Union Bank of Switzerland,
 852 F. Supp. 180 (S.D.N.Y. 1994) .................................................................................. 5

Saks v. Franklin Covey Co.,
 316 F. 3d 337 (2d Cir. 2003) ............................................................................................ 2

Walker v. Carter,
 210 F. Supp. 3d 487 (S.D. N.Y. 2016) ......................................................................... 4, 5

Wechsler v. Hunt Health Systems, Ltd.,
 186 F. Supp.2d 402 (S.D.N.Y. 2002) .............................................................................. 4

**Statutes**

New York State Tax Law §470(16) ............................................................................................. 6

New York State Tax Law §483(a)(2) ...................................................................................... 6, 7

New York State Tax Law §483(b)(1)(A) ..................................................................................... 9

New York State Tax Law §483(b)(1)(B) ............................................................................. 9

New York State Tax Law §483(c) ..................................................................................... 10

New York State Tax Law §484 ................................................................................. 1, 2, 4, 6

New York State Tax Law §484(a) .............................................................................. 7, 8, 10

New York State Tax Law §484(a)(1) .................................................................................. 7

New York State Tax Law §484(a)(2) ............................................................................... 6, 7

New York State Tax Law §484(a)(6) .................................................................................. 7

**Other Authorities**

New York State Taxation and Finance Publication 508 (7/10) ....................................... 8, 9

**Rules**

Fed. R. Civ. P. 15(a) ......................................................................................................... 3, 4

Fed. R. Civ. P. 15(a)(1)(A) .................................................................................................. 3

Fed. R. Civ. P. 15(a)(2) ....................................................................................................... 3

Fed. R. Civ. P. 16 ................................................................................................................ 3

Fed. R. Civ. P. 56 ...................................................................................................... 1, 5, 10

Fed. R. Civ. P. 8(b)(1)(A) ................................................................................................... 2

Fed. R. Civ. P. 8(c) ............................................................................................................. 2

Fed. Rule Civ. P. 12(f) ........................................................................................................ 1

**Regulations**

20 NYCRR 84.1(b)(2) ........................................................................................................ 8

# PRELIMINARY STATEMENT

This Reply Memorandum of Law is respectfully submitted in further support of the motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 by Plaintiff Core-Mark Midcontinent, Inc. (hereinafter referred to as "Core-Mark") against Defendants Tri-State Candy Wholesale, Inc., and Kirtikumar S. Ved a/k/a Ved Kirtikumar a/k/a Kirti Ved a/k/a Kirdi Kumar (hereinafter "Tri-State", "Ved", or collectively "Defendants"). In opposition to Core-Mark's motion, when given the opportunity to dispute the Outstanding Balance they owe to Core-Mark, Defendants have failed to do so. In fact, in opposition to this motion, Defendants:

- **Do Not Dispute** that they established accounts with Core-Mark to order products;
- **Do Not Dispute** that they signed and agreed to the Core-Mark credit agreements
- **Do Not Dispute** that they ordered and received the products set forth in Core-Mark's Accounting (Exhibit "H" to Lewis Aff.);
- **Do Not Dispute** that they have not paid the Outstanding Balance set forth in the Accounting;
- **Do Not Dispute** that their affirmative defenses and counterclaims set forth in their Answer dated July 24, 2014 have no basis and do not state claims, and should be dismissed, as Core-Mark moved and argued in its original motion papers. Accordingly, since Tri-State has apparently abandoned their other alleged defenses contained in their answer to the Complaint (ECF Docket #6) they should be deemed stricken pursuant to Fed. Rule Civ. P. 12(f).

Instead of disputing the money they owe, Defendants assert one primary argument in opposition; that is, due to an alleged violation of the New York State Tax Law §484 (the "Cigarette Marketing Standards Act" or "CMSA") (i.e. providing alleged "rebates" to Tri-State), Core-Mark is barred from seeking judgment against the Defendants for the full and uncontested value of the debt owed by Tri-State to Core-Mark for the purchase of among other products, cigarettes.

As set forth further below, Defendants' argument was never asserted (and therefore, waived) and, in any event, is wholly unsupported, unavailing, and insufficient to raise a material question of fact. In particular, Defendants seek to assert an affirmative defense (illegality) that was waived, as it was not asserted in their Answer to the Complaint (ECF Docket # 6). Even if

1

considered, the illegality argument also fails since the Tax Law sections Core-Mark allegedly violated do not apply to Core-Mark and Defendants.

**REPLY ARGUMENT**

**DEFENDANTS' ONLY "DEFENSE" TO SUMMARY JUDGMENT IS AN AFFIRMATIVE DEFENSE THAT WAS NEVER PLED AND THEREFORE HAS BEEN WAIVED, BUT EVEN IF CONSIDERED, DEFENDANTS' ALLEGATION THAT CORE-MARK VIOLATED NEW YORK TAX LAW §484 IS MERITLESS SINCE IT DOES NOT APPLY TO CORE-MARK AND WOULD NOT BAR RECOVERY IN ANY EVENT.**

**A.     The Only "Defense" Raised by Defendants In Opposition To Core-Mark's Motion is an Unpled Affirmative Defense, and Accordingly, Was Waived.**

Rather than assert any defense to the $2.7 million plus that they owe, in opposition to Core-Mark's motion for summary judgment, Defendants attempt to throw the proverbial "Hail Mary". Despite not pleading these defenses, Defendants argue that Core-Mark's claims are barred by New York Tax Law §484 (and related to that, the doctrines of *illegality* and *in pari delicto*). . This so-called defense should be swiftly rejected.

First and foremost, these "affirmative defenses" were never asserted, and thus, have been waived as they were contained in Defendants' untimely (and rejected) "Amended Answer" (See Lauricella Dec. Exhibit "B", ECF Docket # 6). The Federal Rules of Civil Procedure states: "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." F. Rule Civ. P. 8 (c); F. Rule Civ. P. 8(b)(1)(A)("In responding to a pleading a party must: state in short and plain terms its defenses to each claim asserted against it"). "One of the core purposes of Rule 8(c) is to place the opposing parties on notice that a particular defense will be pursued as to prevent surprise or unfair prejudice." Saks v. Franklin Covey Co., 316 F. 3d 337 (2d Cir. 2003) (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 350

2

(1971) and finding that the Defendant waived its affirmative defense by not asserting it in their answer to the complaint which prejudiced the Plaintiff).

Accordingly, a defendant waives an affirmative defense when such affirmative defense is not included in the Defendants' Answer to the Complaint and not raised at the first pragmatically possible time which results in unfair prejudice to the Plaintiff. <u>Am. Fed Group, Ltd. v. Rothenberg</u>, 136 F.3d 897, 910 (2d Cir. 1998); FRCP 15(a). Of course, a defendant may amend its Answer once "as a matter of course", if done so within 21 days after serving it. FRCP 15(a)(1)(A). If a defendant does not amend within this time period, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FRCP 15(a)(2).

Here, Defendants Answered the Complaint through counsel on July 9, 2014 (ECF Docket No. 6). Following the Rule 16 conference, in August 2014, Defendants later submitted a letter at the request of the Court which withdraw certain jurisdictional defenses which lacked a good faith basis (ECF Docket #'s 10-11). Defendants did not move the Court at that time to attempt to add any further Affirmative Defenses to their Answer. Thereafter, the parties engaged in discovery and significant motion practice until May 5, 2015 (ECF Docket #'s 10-29). Around the same time, Defendants present counsel appeared in this action. On July 13, 2015, Defendants' counsel, unilaterally, **and without permission of this Court**, filed on the ECF Docket a purported "Amended Answer" to the Complaint which, among other things, asserted several additional affirmative defenses o (ECF Docket # 38). Core-Mark did not consent to the service of an Amended Answer. In fact, Core-Mark immediately rejected Tri-State's so-called "Amended Answer" by letter dated July 24, 2015 (a copy of said letter is attached as Exhibit "B"). Defendants never responded nor sought leave of the Court to amend its Answer.

3

Since the Defendant has failed to plead its illegality defense premised on the alleged violation of the New York Tax Law § 484, et. seq., or seek leave of this Court to amend their answer to include such a defense the Defendants cannot raise it now in Opposition to Summary Judgment. Wechsler v. Hunt Health Systems, Ltd., 186 F. Supp.2d 402, 415-416 (S.D.N.Y. 2002)("…because their [defendants] time to amend their answer as a matter of right had expired under Fed. R. Civ. P. 15(a), defendants should have obtained prior leave of the Court before submitting their Amended Answer").

B. **Even If Defendants Didn't Waive This Defense, Defendants' Self-Serving Testimony Regarding Alleged "Rebates" Is Insufficient to Defeat Summary Judgment.**

Regardless of the Defendants' failure to plead this alleged affirmative defense, Defendants' have utterly failed to offer any evidence that Core-Mark entered into a written or oral agreement to provide any rebates or other pricing discount to Tri-State other than his own self-serving account of conversations with Core-Mark representatives. Courts in New York have routinely rejected self-serving testimony related to an alleged contract or agreement. Walker v. Carter, 210 F. Supp. 3d 487, 503 (S.D. N.Y. 2016)("Plaintiff's testimony here cannot prevent summary judgment: the alleged agreement is the type of agreement that must be in writing under New York's Statute of Frauds").

Other than Ved's own self-serving statements (Ved Tr. 204:21-208:12), Defendants have provided no other evidence other than inaccurate records which at best establish Tri-State issued payments to Core-Mark by check that were not credited to Tri-State's account (Ved Dec. at ¶ 12). This is hardly evidence of alleged "rebates" under the New York Tax Law §484. See Blue Star Meat Corp. v. Gourmet Box, Inc., 19 Misc.3d 137(A), (1st Dep. 2008)("[d]efendant's bare allegations as to an alleged oral agreement for a discounted invoice price are inconsistent…and

4

belied by defendant's acknowledgment of the debt and plaintiff's demands for payment"); Walker v. Carter, 210 F. Supp. 3d 487, 503 (S.D.N.Y 2016)("a nonmoving party's self-serving statement, without direct [] evidence to support the charge, is insufficient to defeat a motion for summary judgment" (internal citation omitted)). Courts have also adopted the position that on summary judgment it does not have the duty to examine the record to find evidence which supports the non-moving party's opposition to a motion.[1]

Core-Mark has demonstrated the lack of evidence supporting Defendants' claim of illegality. Celotex v. Catrett, 477 U.S. 317, 323-35(1986) (noting that the moving must only demonstrate that the nonmoving party lacks evidence to support their claim, or here affirmative defense). In order to defeat this motion Tri-State must properly support their alleged CMSA (illegality) affirmative defense. Rovtar v. Union Bank of Switzerland, 852 F. Supp. 180 (S.D.N.Y. 1994)("the nonmoving party must provide enough evidence to support a jury verdict in its favor"). Based on the record and in particular the evidence which Tri-State relies upon, summary judgment must be granted in favor of Core-Mark.

    **C.**    **Core-Mark Is An "Agent" Within The Meaning of New York Tax Law § 470 (12) and Therefore Cannot Violate § 484(a)(2).**

Although it is clear that Defendants waived its affirmative defense based on illegality, even if the Court considers this defense, Defendants blatantly ignore the clear text of the Tax Law in an effort to confuse the Court and obfuscate their obligation to pay for the goods provided by Core-Mark to Tri-State.

---

[1] Charter Oak Fire Ins. Co. v. Tri-County Fire & Safety Equipment Co., 636 F. Supp. 2d 193, 197 (E.D.N.Y 2009)("it is the duty of the parties, not the court, to sift through the record and bring to the court's attention pertinent information that may create or defeat a triable issue of fact" (internal citations omitted)); Johnson v. Kaufman Co., 2017 WL 978099 (N.D. Tex. 2017) ("[r]ule 56 does not impose a duty on the Court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment").

5

1271091v.1

In opposition, Defendants argue that the "offer of a rebate in price, or giving of a rebate in price" violates Tax Law §484(a)(2)[2]. This is inaccurate. New York State Tax Law § 470 (16) defines "agent" as "any person licensed by the commissioner of taxation and finance to purchase and affix adhesive or meter stamps on packages of cigarettes under this article." As Defendants point out in Exhibit "B" to the Declaration of Kirtikumar Ved at Page 8 (also labeled Tri-002313) (which is an invoice from Core-Mark for, among other things, cigarettes, Core-Mark is, in all transactions, the stamping "agent" for purposes of affixing of tax stamps to the cigarettes and facilitating the payment of <u>all taxes due</u> to the State of New York.[3] Section483 (a)(2) defines the term "wholesale dealer" specifically for purposes of Article 20-A (a/k/a the CMSA) as "any person, **other than an agent**, who sells cigarettes to retail dealers…" Here, the New York State Legislature clearly and unambiguously exempts from the definition of a "wholesale dealer" those acting as an "agent". Tax Law §484 (a)(2) states in pertinent part that "…it shall be unlawful and a violation of this article…[f]or any **wholesale dealer**:

> (A) to induce or attempt to induce or to procure or attempt to procure the purchase of cigarettes at a price less than the cost of the agent…; or (B) to induce or attempt to induce or to procure or attempt to procure any rebate or concession of any kind…"

Since Core-Mark acted as the Cigarette Tax Stamping Agent in all transactions with Tri-State who in turn sold cigarettes to "retail dealers," it is inescapable that the provisions of §484(a)(2) apply only to wholesale dealers as defined by §483(a)(2) and does not apply to Core-Mark (Ved. Tr. 11:8-12; 14:9-12; 15:2-9; 18:20-25); Tax Law § 484(a).

---

[2] It is worth noting that under Defendants interpretation of § 484 that any extension of a reduction in the debt owed by Tri-State to Core-Mark would be considered a "rebate". This proposition is completely unsupported by the law. For illustration purposes, the principal settlement the parties reached as facilitated by the Honorable Magistrate Gold would have, violated the Tax Law if the case was settled for any value less than the full balance due. It is quite clear that this result was not contemplated by the Legislature when the statute was enacted.

[3] Attached as Exhibit "C" to the Reply Declaration of Peter Lauricella, Esq. is a copy of the registration of Core-Mark with the New York State Department of Taxation and Finance as a Licensed and Registered Cigarette Tax Agent.

### D. Tri-State Provides No Evidence That Core-Mark Sold or Offered to Sell Cigarettes in Violation of New York Tax Law § 484 (a)(1) Which is an Essential Element of Their Defense.

Tri-State also argues that Core-Mark violated § 484(a)(1) which applies to "agents" as well as "wholesale dealers". Section 484(a)(1) states in pertinent part that "it shall be unlawful and a violation of this article…

> For any agent, wholesale dealer or retail dealer, **with the intent to injure competitors** or destroy or substantially lessen competition, or with intent to avoid the collection or paying over of such taxes as may be required by law, **to advertise, offer to sell, or sell cigarettes at less than cost by such agent**…" Id. (emphasis added).

Defendants principally rely upon Tax Law §484(a)(6), which states that it is *prima facie* "intent to injure competitors and to destroy or substantially lessen competition, or intent to avoid the collection or paying over of such taxes as may be required by law" upon "evidence of any offer of a rebate, or giving of a rebate…at less than cost of the agent." Tax Law § 484(a)(6); (Defendant's Memorandum of Law in Opposition at Pg.13-14). First, the record is devoid of any material evidence whatsoever which supports the contention that Core-Mark offered to or actually gave Tri-State a rebate in price. Second, Tri-State ignores a plain reading of the statute which is comprised of two necessary elements: (i) intent to injure; and (ii) the advertisement, offering to sell, or sale cigarettes at less than cost of the agent. Tax Law § 484 (a)(1); City of New York v. Golden Feather Smoke Shop, Inc., 2009 U.S. Distr. LEXIS 76306, at 39 (E.D.N.Y. 2009) (stating that it is unlawful to sell "cigarettes below cost when the seller intends thereby to harm competition or evade taxes").

While Core-Mark disagrees with the analysis set forth by Defendants that their exists *prima facie* evidence of the requisite "intent to injure" (because Defendants have offered none), there clearly is no material evidence which would indicate or even suggest that such a "rebate",

7

if actually offered or given, would result in the sale of cigarettes at less than the cost of the agent. <u>Jetro Enters v. Taxation Dept.</u>, 194 A.D. 2d 1970, 1974 (App. Div. 1993)("the CMSA provides that rebates or concessions, in and of themselves, are not unlawful"). The Regulations implementing this statute furthers clarifies this, stating that:

> [a] rebate or a concession, in of itself, is neither unlawful for the purposes of the cigarette marketing standards nor a violation of the Tax Law where such rebate or concession does not directly or indirectly serve to reduce the price below that at which cigarettes can be lawfully sold or purchased.

20 NYCRR 84.1(b)(2). The undisputed evidence, which includes Core-Mark's invoices, summary accounting and the specific invoices submitted by Tri-State in opposition to this motion clearly establish that Core-Mark's sale of cigarettes was in full compliance with the CMSA. (Ved Dec. Exhibit "B"; New York State Taxation and Finance Publication 508 (7/10); Lauricella Dec. Exhibit "D").

Other than bald assertions and allegations, Tri-State submits no concrete or reliable evidence to support their theory. In fact, they completely misinterpret the statutory regime upon which their alleged affirmative defense is based, i.e. there is no evidence that Core-Mark sold cigarettes to Tri-State at below cost in violation of Tax Law § 484(a). Tri-State does not even attempt to raise or dispute Core-Mark's compliance with the minimum price requirements set forth in the statute. Failure to do so is fatal to Tri-State's defense and insufficient to defeat this motion.

As set forth in more detail in the accompanying Reply Declaration of Peter Lauricella the Tax Law provides two very specific guidelines for determining the "cost of the agent". The method in which the *Publication 508* is based is the statutory default of cost, i.e. based on a straight percentage (7/8 % of the basic cost of cigarettes plus twenty cents). Tax Law

8

483(b)(1)(B). However and more importantly, Tax Law § 483 (b)(1)(A) defines the "cost of the agent" differently than the default provision in (b)(1)(B) which provides in pertinent part:

> **the basic cost of the cigarettes plus the cost of doing business by the agent** as evidenced by the accounting standards and methods regularly employed by said agent in his determination of costs for the purposes of federal income tax reporting for the total operation of his establishment, and must include, without limitation, labor, including salaries of executives and officers, rent, depreciation, selling costs, maintenance of equipment, delivery costs, interest payable, all types of licenses, taxes, insurance and advertising expressed as a percentage and applied to the basic cost of cigarettes.

This provision illustrates that the "cost of the agent" can and indeed may be lower than the stated price on the above referenced *Publication 508*. Most significantly, for purposes of this motion, Tri-State has failed to offer any evidence related to the actual cost of the agent or point to evidence establishing that the price paid by Tri-State was lower than the "cost to the agent", Core-Mark. The fact that Defendants completely overlook this particular portion of the statute illustrates just how unsubstantiated and specious (and indeed sanctionable) the claims and allegations of violations of the CMSA made by Defendants are. There is no evidence to support Defendants' "rebate" defense and the evidence presented by Core-Mark clearly shows that Core-Mark fully complied with the statutory mandates in their sale of cigarettes to Tri-State.

Defendants acknowledge and concede in their Memorandum of Law in Opposition that the CMSA's central purpose is to protect the New York State cigarette distribution industry from out-of-state cigarette sellers who have an unfair advantage over in-state sellers and to prevent the evasion of local cigarette and sales taxes.[4] Moreover, the Court will note that the legislature did

---

[4] The preamble to the statute states: "The legislature hereby finds that it is necessary to regulate and control the sales price of cigarettes within the state at the wholesale and retail levels for the purpose of stabilizing the cigarette industry in New York State. The legislature finds that predatory pricing by cigarette dealers from states surrounding New York has contributed to the destruction of the price structure in New York State. Those dealers, who are protected in their home states by cigarette sales price laws similar to that contained in this act, have had an unfair

9

not aim the statute at protecting the interests of an in-state seller, such as Tri-State, from an out of state seller, such as Core-Mark, in transactions which result in the receipt of "rebates". Stated differently, any alleged rebates received by Tri-State from Core-Mark are not of the kind which the statute was aimed to prohibit (i.e. those that are specifically aimed to harm a competitor or avoid payment of taxes). In addition, the facts show that Core-Mark is and remains in good standing with the New York State Department of Taxation and Finance and has prepaid all taxes to the State of New York as required by law. (Lauricella Dec. at Exhibit "C"). Since there is no violation of Tax Law § 484(a), there is no basis for the Court to find that the contract between Core-Mark and Tri-State would be invalid or illegal pursuant to § 484(c).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court grant Plaintiff Core-Mark Midcontinent, Inc.'s Rule 56 motion for Summary Judgment in the amount of $4,480,755.13 and for such other and further relief that this Court deems just and proper.

Dated: August 8, 2017  
      Albany, New York

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: s/ Peter Lauricella  
Peter A. Lauricella, Esq.  
Christopher A. Priore, Esq.  
*Attorneys for Plaintiff Core-Mark Midcontinent, Inc.*  
18 Corporate Woods Boulevard, Third Floor  
Albany, New York 12211  
Telephone: (518) 449-8893  
Our File No.: 08821.00115  
peter.lauricella@wilsonelser.com

---

advantage over New York cigarette dealers. This act is enacted by the legislature to prevent the movement of the cigarette distribution industry outside of New York, with the loss of jobs attendant to such a move and to prevent the sale of untaxed cigarettes and the evasion of state and local cigarette and sales taxes." L 1985, ch 897, § 1; Jetro Enters v. Taxation Dept., 194 A.D. 2d 1970, 1974 (App. Div. 1993).